888 So.2d 975 (2004)
STATE of Louisiana
v.
Jimmy EMERSON, Jr.
No. 2004 KA 0156.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Rehearing Denied December 10, 2004.
*976 Donald D. Candell, Assistant District Attorney, Donaldsonville, Counsel for Appellee State of Louisiana.
Gwendolyn K. Brown, Appellate Attorney, Baton Rouge, Counsel for Defendant/Appellant Jimmy Emerson, Jr.
Before: WHIPPLE, FITZSIMMONS AND DOWNING, JJ.
DOWNING, J.
This is defendant's second appeal urging the excessiveness of a sentence imposed pursuant to a plea bargain agreement under which defendant pled guilty to a lesser offense and sentencing was left largely to the discretion of the trial judge, subject to a cap.

PROCEDURAL HISTORY AND FACTS
The defendant, Jamie Emerson, Jr., was charged by grand jury indictment with the *977 second degree murder of Lavell Earl, in violation of La. R.S. 14:30.1.[1] The offense occurred on January 11, 1996. Defendant initially pled not guilty.[2] After a trial by jury in which the primary defense urged was self-defense, defendant was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.[3] Thereafter, defendant's conviction and sentence were reversed on appeal due to gaps in the transcript of voir dire examination that made adequate appellate review impossible.[4]
Prior to a scheduled re-trial, defendant withdrew his plea of not guilty and pled guilty to manslaughter, a violation of La. R.S. 14:31.[5] The trial court accepted the plea to the lesser offense. As part of a plea bargain arrangement, defendant's sentence was left to the discretion of the trial judge, who agreed to order a presentence investigation report, except that a cap of thirty years imprisonment was agreed upon. In addition, the State agreed not to get involved "with the sentencing or with any parole recommendations." The trial court advised defendant that he should make every effort to bring before the court evidence favorable to his sentencing and further indicated his intent to fashion a sentence particularized to this defendant. After reviewing all materials submitted to him, the trial court sentenced defendant to twenty-five years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[6]
Defendant filed a motion to reconsider sentence,[7] relying primarily upon excerpts from the original trial to bolster his argument that the sentence imposed was unduly harsh. He requested that the transcript from the trial be admitted into evidence in the sentencing proceeding, which request was granted.[8] At the sentencing hearing, argument was made, but no witnesses were presented. The prosecutor made a brief statement, acknowledging that the State did not intend to get involved in the sentencing. A new judge assigned to the matter presided over the motion to reconsider sentence. He assured the parties that he was fully familiar with the trial transcript through his attempts to reconstruct it in compliance with orders of this court. After giving detailed oral and written reasons for judgment, the new trial judge amended defendant's sentence to delete the provision denying him the benefit of parole, probation, or suspension of sentence, but the sentence was otherwise left *978 unchanged at twenty-five years imprisonment at hard labor.
Defendant appealed, insisting that the trial judge erred in imposing an excessive sentence and in relying on erroneous information that influenced sentencing. This court affirmed defendant's conviction on appeal, but vacated his sentence and remanded for resentencing, finding merit in defendant's assertion that certain sentencing considerations were based on misinformation.[9] On remand, the trial judge corrected certain errors pointed out by this court, but again sentenced defendant to twenty-five years imprisonment at hard labor.[10] The prosecutor made no comments during this sentencing hearing.
Defendant filed a motion to reconsider the sentence imposed pursuant to remand from this court, rearguing many of the same arguments made in the earlier proceeding.[11] Another hearing was held and defendant, for the first time, introduced the testimony of witnesses in an attempt to obtain a downward revision of his sentence. The witnesses who testified had also testified at defendant's jury trial. Yashisha Williams testified that she witnessed the altercation between the defendant and the victim. She admitted that at first it looked as though the two were playing. But toward the end, defendant was being hurt. She claimed that when defendant got loose, he ran into the nearby trailer owned by his aunt and the victim pursued him with a gun. Jermaine West testified that after defendant went inside to get a gun, the screen door was closed and locked. He claimed that the victim pulled it open and charged the defendant. He further claimed that he did not think defendant would intentionally endanger the residents of the trailer. Darryl West, a convicted felon who testified at the initial trial and a first cousin to Jermaine West, testified that he saw Desmond Dunbar give the victim a gun. He did not testify to this information at defendant's jury trial, claiming that he was afraid to do so for fear of retaliation by Dunbar, who was then a co-defendant of his on an unrelated felony charge.
At the conclusion of the defendant's presentation, the prosecutor opined that the twenty-five year sentence earlier imposed was reasonable and that defendant was attempting to demonstrate that the homicide was justified as self-defense, even though he had pled guilty to manslaughter. At the conclusion of the hearing held on October 21, 2003, the trial judge granted defendant's motion to reconsider sentence. He revised defendant's sentence downward to twenty-one years imprisonment at hard labor, with credit for time already served, adopting his previously filed reasons for ruling.[12] No oral motion was made to reconsider sentence, nor was any follow-up written motion to reconsider sentence ever filed. Thereafter, defendant filed another appeal contesting the excessiveness of this sentence.
In his latest appeal, defendant urges four assignments of error, all related to his claim that his twenty-one year sentence is excessive:
1. The trial judge erred by considering erroneous information when it selected a sentence for defendant;

*979 2. The trial judge erred by failing to correct his errors when those errors were brought to his attention through the motion to reconsider sentence and memorandum in support thereof;
3. The trial judge erred in applying aggravating factors not supported by the record evidence;
4. The trial judge erred in imposing an excessive sentence.
Concluding that defendant cannot legally appeal the judgment and that his complaints were not properly preserved for appellate review, we affirm his sentence.

ANALYSIS
At defendant's Boykin hearing, he stipulated that he committed manslaughter upon Lavell Earl on January 11, 1996.[13] Although there was a plea agreement whereby the State agreed to accept a guilty plea to the offense of manslaughter, there was no agreement as to the sentence to be imposed. This sentence was left to the discretion of the sentencing judge, subject to a thirty-year cap. In defendant's four related assignments of error, he argues that the trial judge abused his discretion by imposing an excessive sentence.
First, we note that a defendant has no appeal or review of a sentence imposed in conformity with a plea agreement set forth in the record at the time of the plea. See State v. Terrebonne, 01-2632, p. 5 (La.App. 1 Cir. 6/21/02), 822 So.2d 149, 152. Here, the sentence imposed is in conformity with the plea agreement.
Further, the record does not reflect either an oral or written motion to reconsider the new sentence imposed on October 21, 2003. When his new sentence was imposed, defendant made no comment that could be interpreted as an objection to the new sentence.
One purpose of the motion to reconsider is to allow the defendant to raise any errors that may have occurred in sentencing while the trial judge still has the jurisdiction to change or correct the sentence. The defendant may point out such errors or deficiencies, or may present argument or evidence not considered in the original sentencing, thereby preventing the necessity of a remand for resentencing. State v. Mims, 619 So.2d 1059, 1059-1060 (La.1993) (per curiam). La.Code Crim. P. art. 881.1 C uses the term "resentence," making it clear that when relief is granted, the result is imposition of a new sentence. Since a new sentence is imposed when relief is granted, the language of article 881.1 E requires that a renewed motion for reconsideration be filed, specifying the grounds for objection to the new sentence. No such action was taken. Under the clear language of La.Code Crim. P. art. 881.1 E, failure to make or file a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. We cannot assume that defendant's objections to the earlier sentence are equally applicable to the sentence imposed on October 21, 2003. In State v. Smith, 03-1153 p. 7 (La.App. 1 Cir. 4/7/04), 879 So.2d 179, (en banc), we held that the considerations that require giving the trial judge an opportunity to reconsider a sentence apply equally when a trial judge has imposed a new and different sentence in response to a defense motion for reconsideration.[14]
*980 Defendant was required to file a new motion for reconsideration of sentence in the trial court in order to preserve appellate review of the new sentence imposed on October 21, 2003. Accordingly, in this case the defendant is procedurally barred from having his challenge to the new sentence reviewed by this court on appeal. State v. Felder, 00-2887, p. 10 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 369; State v. Duncan, 94-1563, p. 2 (La.App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam).

DECREE
We affirm the judgment of the trial court for the above-stated reasons.
SENTENCE OF OCTOBER 21, 2003 AFFIRMED.
NOTES
[1] The indictment was returned on January 25, 1996. Defendant was born November 14, 1979 and was 16 on the date of the offense. The court issued a detention order on January 11, 1996 under its juvenile jurisdiction. Record, p. 164. A continued custody hearing was scheduled for January 16, 1996, but there is no evidence that such a hearing was ever conducted. Record, p. 203.
[2] The record suggests that a preliminary examination was held on January 23 and 25, 1996. Record, p. 36.
[3] Defendant's trial was presided over by the Honorable A.J. Kling, Jr. Defendant was sentenced, without objection of counsel, on September 16, 1996.
[4] State v. Emerson, 99-2440 (La.App. 1 Cir. 5/5/00) (per curiam) (unpublished). See also, State v. Emerson, 98-2390 (La.App. 1 Cir. 7/29/99), 763 So.2d 616 (per curiam). Record, pp. 1497A and 1497B.
[5] The plea was entered on April 18, 2001, after the trial judge conducted a full and adequate Boykin examination. Record, p. 1491.
[6] Record, pp. 1497-1498.
[7] Record, p. 1501.
[8] March 19, 2002.
[9] State v. Emerson, 02-1717 (La.App. 1 Cir. 2/14/03), 838 So.2d 939 (unpublished). Record, p. 1691.
[10] Record, pp. 1696-1697. The written reasons corrected many of the sentencing considerations considered erroneous by this court.
[11] Record, p. 1715.
[12] 10/21/2003.
[13] State v. Emerson, 02-1717 (La.App. 1 Cir. 2/14/03), 838 So.2d 939 (unpublished).
[14] Although defendant argues that the trial judge was obligated under the plea agreement to consider the "facts" of the case (Appellate Brief, p. 13), the record demonstrates that the trial judge agreed to consider the "consequences" and the "situations" of defendant and his family. Record, p. 1670.