STEWART, J.
| ¿The defendant, Jenny Leeper Beene, was found by a jury to be guilty as charged of the vehicular homicide of Erma Lee Jackson. The trial court initially sentenced the defendant to 15 years at hard labor, with the first five years to be served without benefit of probation, parole, or suspension of sentence. However, the trial court granted the defendant’s motion to reconsider sentence and reduced the 15-year sentence to a 12-year sentence, the first five without benefits. We now affirm her conviction and sentence.
FACTS
On September 1, 2007, while traveling on Highway 1 in the vicinity of Oil City, Louisiana, the defendant drove her Ford Expedition in the oncoming lane of travel and crashed into Ms. Jackson’s Pontiac Grand Am. Ms. Jackson was killed by the violent impact.
The defendant was transported to North Caddo Medical Center where her blood was drawn at exactly 5:55 p.m., one hour and 15 minutes after the accident, and a urine sample collected. Subsequent testing revealed that the defendant had a blood alcohol concentration of 0.18 percent and detected the presence of diphenhydra-mine (generic Benadryl) in the defendant’s blood sample. Analysis of her urine sample showed the presence of diphenhydra-mine, hydrocodone (Lortab, a Schedule II controlled dangerous substance), and chlorpheniramine (an antihistamine).
On July 2, 2008, the state filed a bill of information charging the defendant with *302 vehicular homicide in violation of La. R.S. 14:32.1. The defendant entered a not guilty plea and opted for a jury trial.
The defendant’s case was assigned to Criminal Division, Section B, of the 1st Judicial District Court. Judge E. Joseph Bleich, sitting pro tempore, Rhad been presiding over that section when the defendant’s case was called for trial on September 9, 2013. However, Judge Bleich had a prior commitment to hear a matter in the 26th Judicial District Court beginning that same week. Pursuant to Rule 3.1, a local rule permitting the exchange of assignments between judges, Judge Bleich and Judge Scott Crichton[1] signed an order effective September 9, 2013, exchanging assignments through September 20, 2013. The defendant’s trial counsel objected to the exchange on the basis that it was an impermissible transfer of the case between sections. The trial judge overruled the objection and denied the defendant’s request that the trial be stayed pending supervisory review. By order rendered on September 11, 2015, this court denied the defendant’s writ application and motion to stay the proceedings.
The state called four witnesses who had observed a dark-colored SUV being driven recklessly shortly before the accident occurred. Two of these witnesses, April Martin (“Martin”) and Virginia Travers (“Travers”), testified that the SUV had damage to its rear and was missing the back glass. Martin, who also observed the accident, testified that the SUV was traveling in the wrong lane after passing her and another vehicle when it hit Ms. Jackson’s vehicle in a head-on collision.
The state also presented testimony from various officers with the Caddo Parish Sheriffs Office (“CPSO”), which investigated the fatal collision. Lieutenant Michael Gray (“Lt. Gray”), who was accepted as an expert in accident and crash reconstruction, identified the defendant as the driver at fault in causing the accident and noted that the accident occurred in Ms. Jackson’s ^southbound lane of travel. Lt. Gray testified that the defendant’s northbound vehicle was very far over the center line and likely driving on the wrong shoulder of the road. He believed the' accident happened as the defendant veered back toward her lane and hit, at an angle, the front passenger side of Ms. Jackson’s vehicle. Gray further testified that the damage to the rear of the defendant’s vehicle was not consistent with the accident and that there was no roadway evidence indicating that the defendant’s Expedition was hit from behind just prior to the accident, as claimed by the defendant.
Sgt. William Gaines (“Sgt. Gaines”) of the CPSO heard the crash from a nearby substation and responded immediately. He found Ms. Jackson deceased. He testified that an empty liquor bottle rolled out of the defendant’s vehicle when emergency personnel opened the door. The presence of over-the-counter drugs, generic Bena-dryl, an empty bottle of Seagram’s Whiskey, and a partially full bottle of wine were discovered in the vehicle during a subsequent search.
Leah Meade, a forensic scientist with the Louisiana State Police Crime Lab and an expert in blood alcohol and toxicology analysis, testified that the defendant’s blood sample contained 0.18 grams of ethyl alcohol per 100 mills of whole blood. Jimmy Barnhill (“Barnhill”), an expert in forensic alcohol toxicology analysis and the system director of the North Louisiana Crime Lab, calculated that the defendant’s blood alcohol level at the time of the accident would have likely been between 0.20 *303 and 0.21, based her body weight and the time at which her blood sample was collected. Barnhill also testified as to the impairing effects of the alcohol and drugs found in the defendant’s blood and urine samples. He explained that the alcohol and drugs would have affected the | .^defendant’s vision and motor skills, her ability to judge distances, and her reaction time. He testified that the accident was consistent with this type of impairment, and he emphasized that the impairment from the alcohol alone was significant.
The defendant testified on her own behalf. Though she admitted to drinking alcohol that day before the accident occurred, she denied taking hydrocodone or Benadryl. She testified that she may have taken a Benadryl during the night to help her sleep and that she had perhaps taken hydrocodone three months before the accident. The defendant denied driving recklessly and insisted that she was not at fault in causing the accident. Instead, she blamed a phantom hit-and-run driver. The defendant testified that her vehicle was hit hard from behind. After being hit, she closed her eyes, screamed, felt another impact, and was knocked out when her air bag deployed. On cross-examination, she testified that she did not see what vehicle supposedly hit her but that it felt like she was hit by something going 150 miles per hour. When asked about the witnesses who testified that they observed her reckless driving just prior to the accident, the defendant stated, “somebody covering up something” and that it was possibly the police “looking for some help.” When questioned in detail about what she drank that day, the defendant admitted to having two drinks of Crown Royal, about 12 ounces, while in her parked vehicle by a Chili’s restaurant when she was out running errands.
The defendant’s mother, Jan McKinnon, testified that she spoke with the defendant in the parking lot of a Brookshire’s on North Market in Shreveport around 4:00 p.m., the afternoon of the accident. According to McKinnon, | fithere was no damage to the rear of the defendant’s vehicle at that time, and the defendant was not intoxicated.
The jury unanimously found the defendant guilty as charged of vehicular homicide. At the sentencing on October 31, 2013, the defendant stated that the accident would not have happened if she had not been drinking, but she still maintained that she was hit from behind just before hitting Ms. Jackson’s vehicle. The trial court noted that the sentencing range was a mandatory minimum five years without benefits due to the fact that the defendant’s blood alcohol concentration was above 0.15 percent when the accident occurred and a maximum of 30 years. In reviewing the facts of the case, the court noted the absence of any evidence of fault on the part of Ms. Jackson, the failure of the defendant to accept any responsibility for the accident at trial or in her presen-tence interview, and the defendant’s expression of some remorse during the sentencing hearing. After discussing various aggravating and mitigating factors and other considerations under La. C.Cr.P. art. 894.1, the court sentenced the defendant to 15 years at hard labor, with the first five years to be served without benefit of probation, parole, or suspension of sentence. Finally, the court noted that vehicular homicide had been designated a crime of violence by the Louisiana Supreme Court.
The defendant filed a motion to reconsider the sentence. She argued that the sentence was excessive given the presence of various mitigating factors and that it was increased based on facts not submitted to the jury. In a written ruling on *304 February 11, 2014, the trial court granted-the defendant’s motion and reduced her 15-year sentence to 12 years at hard labor.
|7Raising five assignments of error, the defendant now appeals her conviction and sentence.
DISCUSSION

Sufficiency of the Evidence

The defendant contends that the state’s evidence was insufficient to support a conviction for vehicular homicide. Specifically, she argues that the evidence establishes reasonable doubt as to whether the fatal collision was caused by another vehicle rear-ending her Expedition and as to whether her intoxication was a contributing cause of the accident.
The standard for reviewing a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517. It is not the function of a reviewing court to assess credibility or reweigh the evidence. State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50. Circumstantial evidence “must exclude every reasonable hypothesis of innocence” in order to support a conviction. La. R.S. 15:438. Ultimately, all the evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard to support a |sconviction. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Copes, 566 So.2d 652 (La.App. 2d Cir. 1990).
When the offense at issue was committed in 2007, vehicular homicide was defined under La. R.S. 14:32.1 as the killing of a human being caused proximately or caused directly by a person’s operation of a motor vehicle, whether or not the offender had the intent to cause death or great bodily harm, when the operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood. To convict, the state must prove beyond a reasonable doubt á causal connection between the defendant’s unlawful blood alcohol concentration and the victim’s death. State v. Taylor, 463 So.2d 1274 (La.1985). Causation is a question of fact to be considered in light of the totality of circumstances surrounding the ultimate harm and its relation to the prohibited conduct. State v. Kalathakis, 563 So.2d 228 (La.1990). To convict for vehicular homicide, the state does not have to prove that the defendant’s intoxication was the sole cause of the accident; rather, the defendant’s intoxication need only be a contributing factor that led to the killing. State in the Interest of R.V., 11-138 (La. App. 5th Cir.12/13/11), 82 So.3d 402.
The state established that the defendant’s blood alcohol level was 0.08 percent or more at the time of the accident; specifically, the evidence showed that it was 0.18 percent one hour and 15 minutes after the accident. Barnhill’s calculations placed the defendant’s blood alcohol concentration at the time of the accident between 0.20 and 0.21 percent, more than twice the legal limit. Barnhill also testified that the defendant’s impairment from the alcohol she consumed would have been significant. He explained that the defen *305 dant’s | flmotor skills, vision, ability to judge distances, and reaction time would have been affected. The state presented testimony from four lay witnesses who observed an SUV matching the defendant’s vehicle being driven recklessly in the moments before the accident. The jury could have reasonably determined that the effects of intoxication described by Barnhill would result in exactly the type of reckless driving observed by the lay witnesses and which caused the fatal crash.
Witnesses James Johnson (“Johnson”) and Lee Patton (“Patton”) were traveling together to a car race in Vivian when they were passed by an SUV traveling at a high rate of speed shortly before the accident occurred. Johnson described the vehicle as either an Expedition, Tahoe, or Yukon that was a metallic brown color.[2] Johnson testified that it was being driven in an extremely reckless manner. He stated that the SUV passed his vehicle in a no passing zone and then proceeded to pass more vehicles by a bridge. He last saw the SUV traveling in the wrong lane and lost sight of it as it went around a curve. He then heard the impact. Johnson testified that he was certain that the SUV that passed him was the one involved in the crash.
Patton, who was a passenger in Johnson’s vehicle, recalled first seeing the SUV, which he identified as an Expedition, traveling toward them. Patton noted the vehicle because of the way it was being driven — recklessly and fast. According to Patton, the SUV made a U-turn, then proceeded to pass them and another vehicle. Like Johnson, Patton testified that he lost sight of the SUV as it went around a curve or hill, then he heard the impact. Although several years |10had elapsed, Patton was 90 percent certain that the SUV that passed him and Johnson was the same one involved in the accident.
Travers encountered a big, dark colored SUV about five to seven miles from where the accident occurred. Travers recalled that the SUV came up to her bumper and almost hit her vehicle as it passed her. She testified that the SUV was driving off the road and then back onto the road. Travers described that the back of the SUV as “messed up,” explaining that it was dented and missing the back glass.
Like Patton, Martin testified that she first observed the SUV, which she described as green with brown around the bottom, make a U-turn. She described the SUV as “wobbling” all over the road as it passed three cars before getting behind her vehicle. After a bridge, the SUV passed Martin and stayed in the wrong lane of travel. Martin noticed that the glass in the rear of the SUV was broken and that it appeared that the vehicle had already been in an accident. Martin testified that she witnessed the accident occur and that the defendant’s SUV was not hit from behind by any vehicle. Martin also testified that she knew the victim and that the victim’s daughter is her half-sister. Although the defendant takes issue with Martin’s credibility due to her relationship with Ms. Jackson and the detailed testimony she provided at trial, the defendant’s argument ignores the facts that the state’s case was not reliant solely on Martin’s testimony and that Martin’s testimony was consistent with that of the other lay witnesses regarding what they observed of the defendant’s SUV being driven recklessly and at high speeds in the moments before the deadly crash.
The record does not show that the defendant’s SUV was struck from behind or *306 create reasonable doubt as to this issue. Martin and Travers both |nnoticed the missing back glass and damaged rear of the SUV as it passed them before the crash occurred. Lt. Gray testified as to the absence of any pre-impact marks or other evidence indicating that the defendant’s SUV was hit from behind on the roadway and that such a hit caused the accident. Other than the defendant’s testimony that she was hit from behind by some vehicle she did not see and that was traveling 150 miles per hour, there was no evidence of this phantom vehicle.
It is the jury’s duty to. assess credibility and weigh the evidence. Marcantel, supra. The jury in this matter found the testimonies of the state’s witnesses more credible than that of the defendant and her mother. We find no merit to the defendant’s arguments that the evidence established reasonable doubt as to whether the accident was caused by another vehicle hitting the rear of her Expedition or as to whether the defendant’s intoxication was a contributing cause of the accident. The totality of the evidence, viewed in the light most favorable to the prosecution, established the defendant’s guilt beyond a reasonable doubt.

Exchange of Assignments Pursuant to Local Court Rule

The defendant argues that she is entitled to a new trial, without a showing of prejudice, because the exchange of assignments between Judge Bleich and Judge Crichton violated La. Dist. Ct. Rules 14 and 14.3.
Rule 14 is the uniform rule for the random allotment of criminal cases by the clerk of court pursuant to methods established by each district court or parish within a district, where applicable. Regarding the random allotment requirement, the supreme court has held:
To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to | ^judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned.
State v. Simpson, .551 So.2d 1303, 1304 (La.1989). The random allotment of criminal cases is required to ensure that the accused is tried before an impartial judge. State v. Sebastien, 31,750 (La.App.2d Cir.3/31/99), 730 So.2d 1040, writ denied, 99-1426 (La.10/29/99), 748 So.2d 1157.
Rule 14.3 provides for the transfer of allotted cases as follows:
Any case that has been allotted may be transferred from one division to another division for good cause, or by written consent of all parties, including the state, the defense, and the court. Consent transfers shall be by written order signed by both the transferring judge and the receiving judge.
If all parties do not consent, a show cause hearing shall be held,, and the burden to show cause -will be upon the moving party. The hearing shall be before a judge ad hoc, selected in the manner set forth for motions to recuse under Louisiana Code of Criminal Procedure Article 675.
The exchange of assignments by Judge Bleich and Judge Crichton for the period from September 9, 2013, through September 20, 2013, was done under a local rule, namely, Rule 3.1 of the District Court Appendices, which provides:
The Court shall consist of three divisions (a) civil; (b) family law; (c) criminal. Each division shall be divided into sections so that the total number of sections *307 equal the number of judges authorized by law for the First Judicial District Court. Each section shall be numbered or lettered.
One judge shall be assigned to each section of each division of the court. All assignments shall be done on the basis of seniority as a district judge in the First Judicial District Court. Assignments will be done by separate order of the court.
If two or more judges are elected or appointed at the same time, the older shall be senior. Assignments shall be made every two years, running from the effective date of the last assignment. Two judges may agree by written order to exchange assignments at any time. 11s[Emphasis added.] A judge may not choose to be assigned to another section of the same division in which he is then serving.
The exchange of assignments did not transfer the defendant’s case from one division to another, and nothing in the record suggests that the state had any involvement in the exchange of assignments by the trial court judges. The defendant concedes that the exchange of assignments was done to facilitate trial of cases on Judge Bleich’s docket while he fulfilled his prior commitment in another district court, and she does not allege any lack of fairness or impartiality on the part of the judge who presided over her trial.
The supreme court has recognized that “a criminal defendant does not have a right to have his case heard by a particular judge.”[3] State v. Cooper, 2010-2844, p. 16 (La.11/16/10), 50 So.3d 115, 128. The Cooper court recognized that the “one judge / one case arrangement” is not practical and not a requirement of random allotment, stating:
We recognize the impracticality of such a requirement-judges get sick, take vacation, have conflicts within their own dockets, resign, or are elected to a different bench. All of these circumstances often result in a case being assigned to another judge for adjudication. The fact that more than one judge handles aspects of any one criminal case does not, in and of itself, prejudice the criminal defendant.
Id., 2010-2344 p. 15, 50 So.3d at 128.
We find no merit to the defendant’s assertion that the alleged violation of La. Dist. Ct. Rules 4.1 and 4.3 by the exchange of assignments between Judge Bleich and Crichton entitles her to relief without the showing of prejudice. In Cooper, supra, the court noted that a criminal defendant “is not denied due process as a result of an error in a particular judge’s selection l14unless he can point to some resulting prejudice.” Id. 2010-2344 p. 20-21, 50 So.3d at 131. Moreover, even a finding that an allotment system violates due process is subject to the harmless error analysis. Sebastien, supra.
In State v. McClain, 194 La. 605,194 So. 563 (La.1940), one judge was substituted for another on the second day of trial proceedings over the objection of the defendant. The substitution was due to court scheduling conflicts and thus a matter of convenience. The first judge presided over jury selection, and the second presided over the rest of the trial proceedings. On appeal from the defendant’s conviction and imposition of the death penalty, the supreme court rejected the argument that prejudice should be presumed and the sub *308 stitution deemed reversible error. Instead, citing then La. C. Cr. P. art. 557,[4] the court determined that the issue was whether the substitution resulted in a miscarriage of justice, was prejudicial to the substantial rights of the accused, or constituted a substantial violation of a constitutional or statutory right. The defendant could not satisfy that burden, and the court concluded that, even if the substitution was an error or irregularity, it was not one that satisfied the requirements of Article 557.
The concept of former Article 557 has been distilled into La. C. Cr. P. art. 921, which provides that the appellate court may not reverse any judgment or ruling “because of error, defect, irregularity, or variance which does not affect substantial rights of the accused.” We find that the exchange of judicial | ^assignments pursuant to the local court rule, under the facts and circumstances of this case, was not an error, defect, irregularity, or variance that affected the substantial rights of the defendant. There was no showing of any resulting prejudice to the defendant. Moreover, even if the exchange did not comply with La. Dist. Ct. Rule 4.3, it was harmless error on the facts of this case. For these reasons, we find no merit to this assignment of error.

Sentencing

The defendant, asserts three assignments of error with regard to her sentencing. She argues that the trial court erred in designating vehicular homicide as crime of violence, in ordering that at least five years of the sentence be imposed without the benefits of probation, parole, or suspension of sentence, and in imposing an excessive sentence of 12 years at hard labor.
In 2007, La. R.S. 14:32.1(B) provided:
Whoever commits the crime of vehicular homicide shall be fined not less than $2,000.00 nor more than $15,000 and shall be imprisoned with or without hard labor for not less than five years nor more than 30 years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the operator’s blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the offender was previously convicted of a violation of R.S. 14:98, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a courLapproved substance abuse program and may require the offender to participate in a court-approved driver improvement program. All driver improvement courses required under this Section shall include instruction on railroad grad crossing safety.
The record shows that following a sentencing hearing on October 31, 2013, the trial court imposed a sentence of 15 years at hard labor and ordered the first five years to be served without benefits; In so *309 sentencing the | ^defendant, the trial court considered that the defendant’s blood alcohol concentration was above 0.15. The trial court also noted that the defendant had a prior conviction under La. R.S. 14:98 in 1999, but the court did not “so much consider that in terms of the five year minimum.” Finally, the trial court noted that vehicular homicide was a crime of violence under a recent supreme court case, State v. Oliphant, 2012-1176 (La.3/19/13), 113 So.3d 165.
In a motion to reconsider sentence, the defendant argued excessiveness due to the presence of mitigating factors. Also, citing La. R.S. 14:32.1(B), La. R.S. 15:571.3, and La. R.S. 15:574.4, she asserted that her sentence was increased based on findings of fact not submitted to a jury and found beyond a reasonable doubt as required by Alleyne v. U.S., — U.S. — , 183 S.Ct. 2151,186 L.Ed.2d 314 (2013). In a judgment rendered on February 11, 2014, the trial court granted the motion for reconsideration and reduced the defendant’s sentence to 12 years at hard labor, five years to be served without benefit of probation, parole, or suspension of sentence. In a written ruling, the trial court gave two reasons for its reconsideration of the sentence. First, the court noted that the defendant did “express a level of remorse for her outrageous and reckless conduct.” Second, the court expressed misgivings about its reliance on the Oli-phant decision in designating the offense a crime of violence when vehicular homicide was not considered as such when the offense occurred. Though it had taken the Oliphant decision into consideration at sentencing, the court now determined that a reduction in the sentence was warranted.
In imposing a new reduced sentence, the trial court did not specifically designate the offense a crime of violence, and no such designation is included in the judgment on the motion to reconsider that sets forth the new sentence. |17We must conclude that the trial court, on reconsideration, did not designate the offense a crime of violence. To the extent that this resulted in an illegally lenient sentence in light of Oliphant, supra, we decline to exercise the permissive authority under La. C. Cr. P. art. 882 to correct the, arguably, illegally lenient sentence.[5] The defendant’s assignment of error concerning the crime of violence designation is rendered moot.
Following the imposition of the new sentence, the defendant did not file another motion for reconsideration. When the trial court grants a motion to reconsider a sentence pursuant to La. C. Cr. P. art. 881.1 and imposes a new sentence, a defendant is required to file a new motion for reconsideration of the sentence, specifying the objections to the new sentence. State v. Williams, 49,249 (La.App.2d Cir. 10/1/14), 149 So.3d 462, fn. 9; State v. Gerald, 2013-1478 (La.App. 1st Cir.5/2/14), 145 So.3d 436, writ denied, 2015-1370 (La.2/13/15), 157 So.3d 585; State v. Emerson, 2004-0156 (La.App. 1st Cir.10/29/04), 888 So.2d 975, writ denied, 2005-0089 (La.4/22/05), 899 So.2d 557. The failure to make or file a new motion for reconsideration of sentence precludes the defendant from raising an objection to the sentence on appeal and limits review to a bare claim of constitutional excessiveness. Williams, supra, citing State v. Mims, 619 So.2d 1059 (La.1993) and State v. Smith, 46,343 (La.App.2d Cir.6/22/11), 71 So.3d 485, writ denied, 2011-1646 (La.1/13/12), 77 So.3d *310 950. As such, our review of the defendant’s sentence is limited to whether it violates La. Const. Art. I, § 20 because it is so grossly 118disproportionate to the severity of the offense such that it shocks the sense of justice and serves no purpose but the infliction of pain and suffering.[6]
The defendant’s sentence of 12 years at hard labor is a lower mid-range sentence reduced from 15 years at hard labor. The defendant consumed a copious amount of alcohol during the afternoon while out running errands. She drove recklessly and aggressively, even traveling in the wrong lane on the highway. Her actions resulted in the violent collision and the killing of Ms. Jackson. The trial court has wide discretion to impose a sentence within the statutory limits, and such sentence will not be set aside absent a manifest abuse of that discretion. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. On this record, we find no abuse of discretion in the imposition of the 12-year hard labor sentence, with the first five years to be served without benefit of probation, parole, or suspension of sentence.[7]
CONCLUSION
For the reasons stated in this opinion, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Now Justice Scott Crichton of the Louisiana Supreme Court.

. The defendant’s Expedition was actually green and gold. However, the photographs entered into evidence include one in which the color even appears blue.

. Our review of the record shows the involvement of at least four different judges in aspects of the defendant's case.

. Article 557 then provided:
No judgment shall be set aside, or a new trial granted by any appellate court of this State, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.

. We note that by Acts 2014, No. 280, § 1, effective May 30, 2014, the legislature amended La. R.S. 14:32.1 adding subsection (C) to provide for sentencing as a crime of violence if the offender’s blood alcohol level exceeds 0.20 at the time of the offense. Because we find that the trial court, on reconsideration of the sentence, did not designate the offense a crime of violence and because we will not correct the, arguably, illegally lenient sentence, we need not address the application of this provision in this matter.

. In the absence of a motion to reconsider following the imposition of the 12-year hard labor sentence, we will not review the assignment alleging error in ordering that the first five years be served without benefits. We do note that the evidence established that the defendant's blood alcohol level was well above 0.15 at the time of the accident.

. Though the defendant's sentence did not include the mandatory fine, this court has held that if the state does not object to the sentence and the defendant is not prejudiced in any way by the trial court’s failure to impose the mandatory fine, then remand is not necessary. State v. Johnson, 43,719 (La. App.2d Cir. 12/3/08), 999 So.2d 126.